UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID THOMPSON BOYD,<br><br>                        Petitioner,<br><br>v.<br><br>DEAN BORDERS, Warden, et al.,<br>                        Respondents. | Case No.: 17cv1896-MMA (JLB)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

David Thompson Boyd (hereinafter "Petitioner") is a state prisoner proceeding *pro se* and *in forma pauperis* with a Second Amended Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] (ECF No. 12.)[2] Petitioner entered a guilty plea pursuant to a plea agreement in the San Diego Superior Court to filing a false instrument, and

---

[1] Although this case was randomly referred to United States Magistrate Judge Jill L. Burkhardt pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument are necessary for the disposition of this matter. See S.D. Cal. Civ.L.R. 71.1(d).

[2] Petitioner initiated this action in the Central District of California and it was transferred here. (See Electronic Case Filing ("ECF") Nos. 1, 3.) He filed an amended petition in this Court on October 6, 2017 (ECF No. 8), and, prior to a response, filed another amended petition on November 7, 2017 (ECF No. 12). Both are titled "First Amended Petition." The operative pleading in this action is the petition filed on November 7, 2017, which the Court refers to as the Second Amended Petition.

admitted a sentence enhancement allegation that he engaged in a pattern of theft-related felony conduct involving the taking or loss of more than $500,000. (ECF No. 18-2 at 14-16; ECF No. 18-10 at 6-11.) He was sentenced to a stipulated term of four years in state prison, consisting of two years on the offense and two years on the enhancement, along with fees, fines and restitution. (ECF No. 18-2 at 40; ECF No. 18-10 at 6-11.) He alleges here that the elements of the enhancement (multiple theft-related felonies involving the taking or loss of more than $500,000), were not proven beyond a reasonable doubt, despite his admission to them during his plea colloquy, because he was convicted of a single, non-theft related felony involving the loss of about $50,000, and that he only became aware of that defect in the prison law library while serving his sentence. (ECF No. 12 at 3-11.) He claims that as a result he is currently incarcerated in violation of the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments. (Id. at 6, 10-11.) He does not wish to withdraw his plea, but merely to invalidate the enhancement, which would result in his immediate release from custody, and although he has not presented his claims to the state supreme court, he contends he does not have a timely available remedy in state court where withdrawal of his plea is the only relief available. (Id. at 6.)

Respondent has filed an Answer and lodged the state court record. (ECF Nos. 17-18, 20.) Respondent contends Petitioner has not exhausted state court remedies because he has not raised his claims in the state supreme court, but relief should be denied notwithstanding the failure to exhaust because, to the extent Petitioner relies on an error in state sentencing law, he fails to present a colorable federal claim. (ECF No. 17-1 at 7-8.) Respondent alternately contends that even if a colorable federal claim is presented, relief is foreclosed by Petitioner's guilty plea under Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character

2

of the guilty plea.") (Id. at 9-10.) Petitioner has not filed a Traverse.

As discussed below, a liberal construction of the *pro se* Second Amended Petition reveals that it presents two federal due process claims, neither of which has been presented to the California Supreme Court, one alleging insufficient evidence to support the sentence enhancement and one alleging the plea to the enhancement was not knowing and voluntary. Although Petitioner did not exhaust state court remedies by presenting the claims to the state supreme court, the exhaustion requirement is technically satisfied because state court remedies no longer remain available as to those claims, which has resulted in a procedural default in this Court. Because both claims fail on the merits under a de novo review, it is unnecessary to determine if Petitioner can show cause and prejudice or a fundamental miscarriage of justice to overcome the default.

I. **PROCEDURAL BACKGROUND**

On June 30, 2016, Petitioner and five other defendants were indicted on 135 felony offenses. (See ECF No. 20-1 at 11-62.) Petitioner was indicted on nineteen counts of procuring or offering a false or forged instrument for recording, two counts of grand theft, and one count of identity theft. (Id.) He was charged with two sentence enhancements which alleged a pattern of related felony conduct involving the taking of, or resulting in the loss of, over $1,300,000 (first enhancement), and over $500,000 (second enhancement). (Id. at 63, 65.) The crimes charged are summarized in Petitioner's probation report:

> The codefendants were involved in a scheme to file fraudulent and forged documents with the State of California and Federal Courts involving 80 properties. . . . [¶] This scheme involved defrauding lenders and owners of mortgages out of their residential properties. Distressed homeowners would pay them money in exchange for the promise of being able to keep their homes and receive large judgments in their favor. Many of the homeowners who followed this advice lost their homes to foreclosure and damaged their credit. The codefendants received over $1,000,000 from these homeowners, with one homeowner paying as much as $42,000 to them and still lost their house. Attorneys did not work on the lawsuits as homeowners had been promised they would. . . . [¶] David Boyd's role was to create fraudulent documents that he then provided to Jacob Orona for use in the scheme. Boyd was referred

3

to as an "attorney" by others involved.
(ECF No. 18-2 at 32-33.)

On January 9, 2017, Petitioner, while representing himself, entered a guilty plea to count 131 of the 135-count indictment, procuring or offering a false or forged instrument in violation of California Penal Code § 115(a), and admitted: "I filed a forged document." (ECF No. 18-2 at 14-16; ECF No. 18-9 at 3-8.) He further admitted the truth of one of the two sentence enhancement allegations pursuant to California Penal Code § 186.11(a)(2), and admitted "that the defendants in this case committed two or more felonies, and that involved a pattern of felony conduct and the taking of or more than $500,000." (Id.) On February 7, 2017, he was sentenced to a stipulated term of four years in prison, consisting of two years on the false instrument charge and two years on the enhancement, and was ordered to pay court fees, a general restitution fine of $1,200, and $50,601.49 in restitution to the Federal Home Loan Mortgage Corporation specific to the loss related to the victim in count 131. (ECF No. 18-2 at 14-16, 40; ECF No. 18-10 at 6-11.)

Petitioner appealed, challenging only his sentence, claiming that the mid-term of 18 months on the forged instrument count was the appropriate term rather than the upper term of two years because no finding was made as to the degree of that offense, and claiming, as he does here, that the sentence enhancement was not applicable because it required multiple felonies and he was convicted of a single felony. (ECF No. 18-2 at 42-45; ECF No. 18-15 at 7-10.) On April 25, 2017, while the appeal was pending, he filed a habeas petition in the state superior court presenting the same claims. (ECF No. 18-15.) That petition was dismissed without prejudice on April 27, 2017, on the basis that the superior court lacked jurisdiction while the appeal was pending. (ECF No. 18-16.)

Petitioner signed a notice of abandonment of his appeal on October 7, 2017. (ECF No. 18-11 at 1-2.) He informed the court that his attorney advised him that the appeal would not provide the relief he sought, invalidation of the enhancement, but would likely invalidate his plea, exposing him to additional charges and restitution. (ECF No. 18-17 at

2.) The appeal was dismissed as abandoned on October 25, 2017. (ECF No. 18-12.)

On October 17, 2017, Petitioner filed a second petition for a writ of habeas corpus in the state superior court, claiming he discovered in the prison law library that the sentence enhancement was invalid because he was convicted of a single felony. (ECF No. 18-17.) The petition was denied on October 23, 2017, on the basis that the appeal was not final because the appellate court had yet to issue a remittitur, and, alternately, because Petitioner had not stated a prima facie case for relief as his allegations were "vague and confusing." (ECF No. 18-18.) He did not thereafter present the claim any other state court.

## II. DISCUSSION

Before addressing the merits of the claims, the Court will address Respondent's contention that federal habeas relief is unavailable because Petitioner has not exhausted state court remedies.

### A. Exhaustion of State Court Remedies

Generally, applications for writs of habeas corpus which contain unexhausted claims must be dismissed. See Rose v. Lundy, 455 U.S. 509, 522 (1982). However, the exhaustion requirement applies only to claims which are cognizable on federal habeas. See Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1992) (noting that Rose presumes the claims are cognizable on federal habeas, and that it would be futile to require the petitioner to exhaust state court remedies as to claims that "clearly do not rise to the level of alleged deprivations of [federal] constitutional rights and that may be denied summarily on their merits."), citing Granberry v. Greer, 481 U.S. 129, 134-35 (1987) (holding that in light of Rose a district court may deny a habeas petition "if it is perfectly clear that the applicant does not raise even a colorable federal claim.")

Federal courts have discretion to deny a habeas petition on the merits notwithstanding a petitioner's failure to fully exhaust state judicial remedies. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in

the courts of the State.") However, the Court may deny relief on the merits of an unexhausted claim under 28 U.S.C. § 2254(b)(2), "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

Thus, the exhaustion requirement only applies if Petitioner's claims are cognizable on federal habeas, that is, if they raise "colorable" claims for relief. If the claims are cognizable and the exhaustion requirement is satisfied, the Court can address the merits. If the claims are colorable and the exhaustion requirement has not been satisfied, the Court cannot grant or deny relief on the merits, but would be required either to dismiss the Second Amended Petition without prejudice to raise the claims after exhaustion, or, if that might result in Petitioner losing the opportunity to present his claims due to the operation of the one-year statute of limitations, consider whether to exercise its discretion to stay this action and hold the petition in abeyance during the exhaustion process. Rhines v. Weber, 544 U.S. 269, 277-78 (2005); Rose, 455 U.S. at 510, 520-21.

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (emphasis added).

Thus, to present a cognizable federal habeas corpus claim under § 2254, a state prisoner must allege both that he is in custody pursuant to a "judgment of a State court," and that he is in custody in "violation of the Constitution or laws or treaties of the United States." Id. The first condition is satisfied because Petitioner was sentenced on February 7, 2017, to four years in prison as a result of a guilty plea, and at that time was given 421 days of custody credits. (ECF No. 18-10 at 9.) Respondent does not contend Petitioner is not currently, or was not at the time he initiated these proceedings, in custody pursuant

to the state court judgment he challenges here. In fact, the record indicates that his earliest possible release date on his current conviction is July 6, 2018. (ECF No. 18-13 at 12.)

With respect to the second requirement, Petitioner alleges he is currently in custody in violation of federal due process and equal protection principles because he is serving two years on an enhancement which does not apply to him, and his admission was based on a "misunderstanding" which he only corrected after he was incarcerated. (ECF No. 12 at 3-11.) He argues that he was convicted of one non-theft related felony which resulted in a loss of just over $50,000, whereas the enhancement requires proof that he was convicted of multiple felonies and engaged in a pattern of felony conduct involving fraud or embezzlement which resulted in the taking or loss of more than $500,000. (Id.)

"The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of *pro se* litigants." Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987), quoting Boag v. MacDougall, 454 U.S. 364, 365 (1982). Liberal construction of *pro se* prisoner habeas petitions is especially important with regard to the determination as to which claims are presented. Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to federal habeas corpus relief, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The Supreme Court has extended those due process protections to sentence enhancements. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (holding, with respect to a sentence enhancement allegation, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the proscribed statutory maximum must be submitted to a jury, and proved beyond a

reasonable doubt.") In addition, federal due process provides that a guilty plea must be knowing and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1983). Among the requirements for a plea to be knowing and voluntary, a defendant must receive notice of the true nature of the charges against him. Henderson v. Morgan, 426 U.S. 637, 645 (1976).

The Court finds that under a liberal construction of the *pro se* Second Amended Petition there are two claims for relief presented. The first alleges a federal due process violation arising from the lack of sufficient evidence to prove the sentence enhancement true beyond a reasonable doubt. Specifically, Petitioner claims the enhancement requires proof that he was convicted of multiple felonies and engaged in a pattern of felony conduct involving fraud or embezzlement which resulted in the taking or loss of more than $500,000, whereas he was convicted of one non-theft related felony which resulted in a loss of just over $50,000. (See ECF No. 12 at 8-11.) The second claim alleges a federal due process violation arising from the admission to the enhancement during the guilty plea. Petitioner contends he was not aware of the elements of the enhancement at the time of his plea, only discovering them later in the prison law library, and his admission was therefore based on a "misunderstanding" that the elements of the enhancement had been satisfied, rendering his plea involuntary.[3] (See id. at 3.)

---

[3] The Second Amended Petition makes a single, unexplained reference in passing that Petitioner was "deprived of life, liberty and property (Corpus) in violation of the equal protection clause of the 5th Amendment to the United States Constitution." (ECF No. 12 at 10.) The Court will not construe the Second Amended Petition as presenting an equal protection claim because the claim is devoid of any supporting factual allegations and therefore wholly conclusory. As such, it does not present a claim for relief. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations insufficient to state a claim for habeas relief); Walters v. Maass, 45 F.3d 1355, 1360 (9th Cir. 1995) ("conclusory allegations do not establish an equal protection violation."); see also City of Cleburne, Tex. v. Cleburn Living Ctr., 473 U.S. 432, 439 (1985) (holding that in order to state an equal protection claim a petitioner must allege that he was intentionally treated differently than other similarly situated individuals based on membership in a protected class).

If these two claims present colorable claims for federal habeas relief, the exhaustion requirement must be satisfied before the Court can address their merits. Granberry, 481 U.S. at 134-35; Acosta-Huerta, 7 F.3d at 142. As discussed below, it appears the claim regarding proof of every element of the enhancement beyond a reasonable doubt does not present a colorable federal due process claim because Petitioner admitted in open court to the truth of the elements of the sentence enhancement, and the due process protection extended to sentence enhancements by Apprendi does not apply in that situation. See Blakely v. Washington, 542 U.S. 296, 303 (2004) ("Our precedents make clear, however, that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.") (emphasis added). Also as discussed below, there is no support in the record whatsoever that Petitioner's admission to the enhancement was not knowing and voluntary. See North Carolina v. Alford, 400 U.S. 25, 31 (1979) (holding that a petitioner must show that his guilty plea did not represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant.")

The Court need not make a determination as to whether the claims are "colorable" however, because even assuming Petitioner has presented colorable claims for relief it is clear the exhaustion requirement is now technically satisfied. In order to exhaust state judicial remedies, a California state prisoner generally must present the California Supreme Court with a fair opportunity to rule on the merits of every issue raised in his or her federal habeas petition. Granberry, 481 U.S. at 133-34. The petitioner must have raised the very same federal claims brought in the federal petition before the state supreme court. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) ("[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); Rose, 455 U.S. at 515 (holding that as a matter of federal-state comity, federal habeas courts generally will not consider a claim until the

state court has had an opportunity to act upon the claim); Picard v. Connor, 404 U.S. 270, 275 (1971) (noting that the exhaustion requirement assures the state court of the "initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.") Petitioner deprived the state court of a fair opportunity to address the merits of his federal claims by failing to present them to the state supreme court.

The exhaustion requirement is technically satisfied, however, if state judicial remedies no longer remain available. See Castille v. Peoples, 489 U.S. 346, 351 (1989) ("The requisite exhaustion may nonetheless exist, of course, if it is clear that respondent's claims are now procedurally barred under [state] law."), citing Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982) ("[The exhaustion] requirement, however, refers only to remedies still available at the time of the federal petition.") It appears that if Petitioner were now to present his claim for the first time to the state supreme court it would be met with a state timeliness bar. See Walker v. Martin, 562 U.S. 307, 312-21 (2011) (holding that California's timeliness rule requiring that a petitioner must seek relief without "substantial delay" as "measured from the time the petitioner or counsel knew, or should reasonably have known, of the information offered in support of the claim and the legal basis for the claim," is clearly established and consistently applied). Petitioner was aware of his claim as early as October 7, 2017, the date he signed the notice of abandonment of his appeal. (ECF No. 18-11.) He states in his state habeas petition, filed on October 17, 2017, that he abandoned his appeal because his attorney advised him that if the appeal succeeded he would not obtain the remedy he sought, invalidation of the two-year sentence on the enhancement, but would likely cause his guilty plea to be withdrawn, exposing him to additional charges and additional restitution.[4] (ECF No. 18-17 at 2.)

Petitioner is now likely barred from returning to state court by California's

---

[4] Petitioner states that he "lacks a 'timely' state remedy" because "circumstances exist that render such state processes as ineffective to protect" his due process rights. (ECF No. 12 at 2, 6, 11.) He appears to rest that contention on his belief that the state court will not invalidate the sentence enhancement without invalidating his plea.

untimeliness bar. Walker, 562 U.S. at 312-21; see also Harris v. Reed, 489 U.S. 255, 268 (1989) (O'Connor, J., concurring) ("[I]n determining whether a remedy for a particular constitutional claim is 'available,' the federal courts are authorized, and indeed required, to assess the likelihood that a state court will accord the habeas petitioner a hearing on the merits of his claim.") Thus, his claim is technically exhausted and procedurally defaulted in this Court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (holding that a procedural default arises when "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."); see id. at 729-30 (a procedural default arises from a violation of a state procedural rule which is independent of federal law, and which is clearly established and consistently applied.); Bennett v. Mueller, 322 F.3d 573, 581 (9th Cir. 2003) ("We conclude that because the California untimeliness rule is not interwoven with federal law, it is an independent state procedural ground.") The default can be excused by showing cause for the failure to satisfy the state procedural rule and prejudice arising from the default, or if a fundamental miscarriage of justice would result from not addressing the claims. Coleman, 501 U.S. at 750.

The Court need not make a determination whether Petitioner could make a showing sufficient to excuse any default because his claims are insufficiently meritorious to provide for federal habeas relief under any standard of review. The Ninth Circuit has indicated that: "Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same." Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.")

The standard of review for claims which are technically exhausted and procedurally defaulted is unclear. Slovik v. Yates, 556 F.3d 747, 751 n.4 (9th Cir. 2009). However, denial of the claim under a de novo review assures a finding that Petitioner is

not entitled to federal habeas relief irrespective of any procedural default or failure to exhaust. See Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) (holding that when the standard of review is unclear, a federal habeas court may conduct a de novo review to deny a petition "because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review.") Under a de novo review, "state court judgments of conviction and sentence carry a presumption of finality and legality and may be set aside only when a state prisoner carries his burden of proving that (his) detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." Hayes v. Brown, 399 F.3d 972, 978 (9th Cir. 2005) (en banc).

**2. Merits**

Respondent contends that by entering a guilty plea Petitioner has forfeited his ability to challenge his sentence on federal habeas. The Supreme Court has stated that:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett, 411 U.S. at 267; citing McMann v. Richardson, 397 U.S. 759, 771 (1970) (holding that a challenge to a plea entered on the advice of counsel requires a showing that the advice was not "within the range of competence demanded of attorneys in criminal cases.") The Tollett bar does not apply to an involuntary plea or one induced by ineffective assistance of counsel.[5] Mitchell v. Superior Court for County of Santa Clara,

---

[5] The Supreme Court has recognized other exceptions to Tollett not applicable here. See United States v. Johnston, 199 F.3d 1015, 1019 n.3 (9th Cir. 1999) (stating that such exceptions "include only those claims in which, judged on the face of the indictment and record, the charge in question is one which the state may not constitutionally

632 F.2d 767, 770 (9th Cir. 1980).

The following exchange took place during Petitioner's guilty plea:

The Court: Mr. Boyd, how do you plead to count 131, which reads as follows: On or about August 1st, 2002, in the County of Los Angeles, you committed the crime of procuring or offering a false or forged instrument, in violation of Penal Code Section 115(a), a felony; that was committed by you, and you did unlawfully, knowingly procure and offer this to be filed, registered, or recorded in a public office in California?

Defendant Boyd: I plead guilty.

The Court: This was a grant deed, Federal Home Mortgage Corporation, to the Ancestral Acquisition Trust; correct?

Defendant Boyd: That's right.

The Court: You plead guilty? All right. [¶] Now, do you admit or deny this: This second special allegation, it's further alleged that, pursuant to Penal Code Section 186.11(a)(2), that you committed – that the defendants in this case committed two or more felonies, and that involved a pattern of felony conduct and the taking of or more than $500,000. Do you admit or deny that?

Defendant Boyd: I admit it.

(ECF No. 18-9 at 6-7.)

Petitioner cannot attack his plea under the McMann ineffective assistance exception to Tollett because he was proceeding pro se when he entered his guilty plea. See Faretta v. California, 422 U.S. 806, 834 n.46 (1975) ("[W]hatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'") Because he admitted the elements of the enhancement, his claim that his federal due process right to have every element of the enhancement proven

---

prosecute."), citing Menna v. New York, 423 U.S. 61, 62 (1975) (double jeopardy) and Blackledge v. Perry, 417 U.S. 21, 30-31 (1974) (vindictive prosecution).

beyond a reasonable doubt clearly fails. Blakely, 542 U.S. at 303 ("Our precedents make clear, however, that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.") (emphasis added).

Finally, a challenge to the plea on the basis that it was not knowing and voluntary also clearly fails. Petitioner alleges he was unaware at the time he admitted the truth of the enhancement that it required him to be convicted of multiple theft-related felonies which resulted in the loss of more than $500,000, a discovery he says he made while later conducting research in the prison law library. (ECF No. 12 at 3-4.) In order for a plea to be knowing and voluntary, the defendant must receive notice of the true nature of the charges against him. Henderson, 426 U.S. at 645. Petitioner was one of six individuals named in a 135-count indictment which included conspiracy to procuring or offering a false or forged instrument for recording, conspiracy to commit grand theft, procuring or offering a forged instrument for recording, grand theft and identity theft. (ECF No. 20-1 at 11-62.) The counts naming Petitioner included nineteen counts of procuring or offering a false or forged instrument for recording, two counts of grand theft, and one count of identity theft, in addition to the two sentence enhancements. (Id. at 19-20, 56-63, 65.) As to the enhancement, the indictment states: "It is further alleged pursuant to Penal Code § 186.11(a)(2), that each and every defendant in the Indictment committed two or more related felonies to wit: Counts 1 through 135, a material element of which is fraud, involving a pattern of related felony conduct and the taking of, or resulted in the loss by another person or entity of, more than five hundred thousand dollars ($500,000)." (ECF No. 20-1 at 63.) The enhancement allegation itself reads: "If the pattern of related felony conduct involves the taking of, or results in the loss by another person or entity of, more than five hundred thousand dollars ($500,000), the addition term of punishment shall be two, three, or five years in the state prison." California Penal Code § 186.11(a)(2).

The transcript of the plea colloquy indicates Petitioner admitted in open court "that, pursuant to Penal Code Section 186.11(a)(2), that you committed – that the

defendants in this case committed two or more felonies, and that involved a pattern of felony conduct and the taking of or more than $500,000." (ECF No. 18-9 at 7.) Petitioner was therefore given notice of the elements of the enhancement both in the indictment and by the trial judge during his plea. His contention that, despite admitting in open court that the elements of the enhancement had been satisfied he only discovered later they had not been satisfied, does not support his claim. See Henderson, 426 U.S. at 645 (holding that in order for a plea to be knowing and voluntary the defendant must receive notice of the true nature of the charges); see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) (holding that statements in open court carry a "strong presumption of verity," and the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.")

In addition, Petitioner was exposed to over 20 years imprisonment based on the 22 counts and the two enhancements on which he was indicted. (See ECF No. 18-2 at 6.) His plea to a single count and a single enhancement substantially limited restitution to the loss related to just one victim of about $50,000, as the prosecutor submitted a declaration stating that the total loss from the entire scheme had so far been calculated at over four million dollars and was expected to be significantly higher. (Id. at 80.) Petitioner submits a letter from his appellate counsel which states that Petitioner had "negotiated an amazing plea bargain on your own behalf," that "based on the provisions of Prop 57, you may be eligible for early release, possibly quite soon," indicating that withdrawal of the plea was the only relief available, and warning Petitioner that proceeding with the appeal risked a dramatic increase in the amount of restitution he could be ordered to pay. (ECF No. 12 at 16-20.) Those considerations, coupled with his stated desire not to withdraw his guilty plea, along with his anticipated release after serving about two and one-half years on the four-year sentence (see ECF No. 18-13 at 12), the record supports a finding that he knowingly, intelligently and voluntarily entered his plea. See Alford, 400 U.S. at 31 (holding that a petitioner must show that his guilty plea did not represent "a voluntary

and intelligent choice among the alternative courses of action open to the defendant."); Brady v. United States, 397 U.S. 742, 749 (1970) ("The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it. One of these circumstances was the possibility of a heavier sentence following a guilty verdict after a trial."); Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity.")

Having admitted the elements of the enhancement were satisfied, and absent a viable challenge to the voluntariness of his plea, Petitioner has failed to show a federal due process violation arising from his admission to the sentence enhancement. This claim fails under a de novo review because Petitioner has not carried "his burden of proving that (his) detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." Hayes, 399 F.3d at 978. Petitioner has therefore failed to show a federal due process violation arising from his admission to the sentence enhancement, and has therefore failed to show that he is in custody in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### III. CERTIFICATE OF APPEALABILITY

Rule 11 of the Federal Rules Governing Section 2254 Cases states that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability is not issued unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003), quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000).

For the reasons set forth herein, the Court finds this standard has not been met. Petitioner has not made a substantial showing that his claims amounted to a denial of his constitutional rights, nor has he demonstrated that a reasonable jurist would find this Court's denial of his claims to be debatable. Accordingly, the Court **DECLINES** to issue

a certificate of appealability as to any claims or issues raised in the Second Amended Petition.

## IV. CONCLUSION

Based on the foregoing, the Second Amended Petition (ECF No. 12) is **DENIED**. Further, the Court **DECLINES** to issue a certificate of appealability. The Clerk of Court is instructed to terminate the case and enter judgment in favor of Respondent.

**IT IS SO ORDERED**.

Dated: July 2, 2018

Hon. Michael M. Anello
United States District Judge